## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **GLENN GRAFF** | ) Case No. 1:2009-CV-00670 |
| **KELLY GRAFF** | ) |
| **HILDRETH MADDOX** | ) Judge Susan J. Dlott |
| **PEGGY MADDOX**, | ) |
| | ) Magistrate Judge Timothy S. Black |
| Plaintiffs, | ) |
| | ) **DEFENDANTS HAVERHILL NORTH** |
| **v.** | ) **COKE COMPANY AND SUNCOKE,** |
| | ) **INC.'S  MEMORANDUM IN SUPPORT** |
| **HAVERHILL NORTH COKE** | ) **OF PARTIAL MOTION TO DISMISS** |
| **COMPANY** | ) **UNDER RULES 12(b)(6) AND 12(b)(1)** |
| **SUNCOKE, INC.**, | ) **OF THE FEDERAL RULES OF CIVIL** |
| | ) **PROCEDURE** |
| Defendants. | ) |

\*   \*   \*

## I.    <u>INTRODUCTION</u>

In their Fourth Cause of Action, Plaintiffs assert that they are entitled to injunctive relief under the citizen suit provision of the Resource Conservation and Recovery Act ("RCRA"), claiming that Defendants Haverhill North Coke Company ("HNCC") and SunCoke, Inc. ("SunCoke") have handled, stored, treated, transported or disposed of solid wastes that present an imminent and substantial endangerment to health and the environment.  Plaintiffs base their RCRA claim on coke oven emissions that are extensively regulated under the Clean Air Act, not RCRA.  This Court should dismiss Plaintiffs' RCRA claim for failing to state a claim upon which relief can be granted because the RCRA enforcement action is not an independent and alternative mechanism for enforcing alleged Clean Air Act violations.  Also, Plaintiffs do not allege any facts that past alleged violations continue to present an imminent and substantial endangerment to health or the environment.

This Court should also dismiss for lack of subject matter jurisdiction those portions of Plaintiffs' First, Second, Third, and Fourth Causes of Action that fail to strictly comply with RCRA's and the Clean Air Act's mandatory pre-suit notice requirement to provide the dates of alleged violations. This Court has subject matter jurisdiction over Plaintiffs' complaint only where dates of the alleged violations can be indentified in the pre-suit notice letter or in documents cited by Plaintiffs that HNCC submitted to regulatory agencies.

## II.   FACTUAL BACKGROUND

### A.   The Air Emissions of the Haverhill North Coke Company Works ("HNCC Works") Are Pervasively Regulated under the Clean Air Act

Unlike coke plants of the past, HNCC Works is a state-of-the-art, non-recovery coke oven facility that was built under the Ohio Environmental Protection Agency's ("Ohio EPA") Permit-to-Install ("PTI") program. The PTI is the vehicle for implementing all of emission limits and standards that fall under federal and state regulations.[1] Under this PTI, HNCC Works was constructed as a non-recovery coke facility because the United States Environmental Protection Agency ("U.S. EPA") has designated this design as the Maximum Achievable Control Technology ("MACT") as it virtually eliminates hazardous air pollutants, such as dioxins, polycyclic aromatic hydrocarbons, hydrochloric acid, and benzene, which older coke plants emitted in substantial quantities. (*See* Exhibit 1, National Emission Standards for Hazardous Air Pollutants for Source Categories; Coke Oven Batteries; Proposed Rule, 57 Fed. Reg. 57534, 57556 (Dec. 4, 1992)). In addition to MACT, the PTI requires HNCC Works to implement "best available control" technology (40 CFR Part 52), New Source Performance Standards (40 CFR

---

[1] Under federal and state air pollution regulation, HNCC must also adhere to numerous reporting requirements, including reporting operational malfunctions at the facility. *See*, Ohio Adm.Code 3745-15-06. These regulations require Ohio EPA to assess the nature of each malfunction and, when necessary, request implementation of corrective measures to ensure compliance. In instances where an agency believes that a facility is not complying with the PTI limits and standards, the agency may bring an enforcement action.

Part 60), and to comply with all air emission limits and standards under Ohio's SIP.  Beyond setting limits of criteria pollutants[2] and hazardous air pollutants to protect public health and welfare, HNCC's PTI imposes limits on fugitive particulate and requires HNCC to engage in "good operation and maintenance" practices for its pollution control equipment.

After an extensive application process,[3] including public comment, Ohio EPA issued HNCC a final PTI effective December 11, 2003 to construct a coke facility near Haverhill, Ohio, which was subsequently modified on June 11, 2004, June 27, 2006, January 15, 2008, and November 10, 2008.  Importantly, HNCC's PTI does not regulate HNCC Works as a treatment, storage, or disposal facility under RCRA nor does it regulate any of its coke oven emissions and fugitive emissions under RCRA.  Thus, no aspect of this facility is regulated by RCRA nor do Plaintiffs allege this.

**B.**     **Plaintiffs' First Amended Complaint**

After filing two Citizen Suit Notices and one Complaint, Plaintiffs filed an Amended Complaint, expanding their initial complaint from 39 pages with over 170 individual paragraphs to 55 pages with over 270 individual paragraphs.  (*See* Exhibit 3, Citizen Suit Notice, Exhibit 4, Amended Citizen Suit Notice, Doc. No. 1, Complaint, Doc. No. 7, Plaintiffs' First Amended Complaint).  In addition to sweeping allegations under the Clean Air Act and RCRA, Plaintiffs also allege various causes of action under state common law.  These include: (1) violation of the HNCC's PTI, the Ohio SIP, the Clean Air Act, and federal air regulations; (2) violation of the Ohio SIP malfunction reporting requirements; (3) violations of the Ohio SIP Air Pollution Nuisance provision; (4) violation of RCRA's Imminent and Substantial Endangerment

---

[2] Criteria pollutants include carbon monoxide, lead, nitrogen dioxide, ozone, particulate matter, and sulfur dioxide.

[3] The permit application process is concisely describe in *City of Monroe v. Middletown Coke Company, Inc.*, Case No. 1:09-cv-63, Doc. No. 73, pp. 6-8 (Aug. 20, 2009).  (*See* Exhibit 2).

Provision; (5) common law negligence; (6) common law nuisance; (7) common law trespass; (8) common law ultra hazardous or abnormally dangerous activity; (9) common law negligent infliction of emotional distress; and (10) common law intentional infliction of emotional distress. (Doc. No. 7, ¶¶ 113-203; 204-213; 214-221; 222-228; 229-235; 236-249; 250-256; 257-262; 263-268; 269-274). In addition to civil penalties and damages, Plaintiffs seek injunctive relief.

All of these causes of action have one common core of alleged facts. Plaintiffs base these causes of action on coke oven air emissions that result from HNCC Works' process and operations. These coke oven emissions are regulated under federal and state air pollution laws and regulations, not RCRA. Thus, this Court should dismiss Plaintiffs' RCRA claim under Rule 12(b)(6) because RCRA is not intended to remedy Clean Air Act violations. Also, as a matter of law, Plaintiffs have failed to demonstrate that alleged past air emission violations currently present an imminent and substantial endangerment to health or the environment.

Also relevant to this Motion, Plaintiffs based their First, Second, Third, and Fourth Causes of Action on the RCRA or Clean Air Act Citizen Suit provisions. *See* 42 U.S.C. §6972; 42 U.S.C. §7406. A prerequisite of both of these provisions is missing in whole or in part from numerous paragraphs contained in Plaintiffs' vast First Amended Complaint and the underlying pre-suit notice letter. Under RCRA and the Clean Air Act, Plaintiffs must base their claim on specifically identified alleged violations and must include the dates of the alleged violations in the pre-suit notice letter.

In certain instances, Plaintiffs' First Amended Complaint and related pre-suit notice letter provide no dates for alleged violations. Table 1 of Defendants' Motion summarizes the paragraphs of Plaintiffs' First Amended Complaint and associated pages of Plaintiffs' pre-suit notice letter where Plaintiffs failed to provide any dates of the alleged violations. Plaintiffs'

failure to provide any dates directly contravenes both RCRA and the Clean Air Act as demonstrated by the case law.  Thus, this Court should dismiss these portions of Plaintiffs' First Amended Complaint for lack of subject matter jurisdiction.

In other instances, as shown in Table 2 of Defendants' Motion, Plaintiffs provide specific dates in either the notice letter or in cited documents that HNCC submitted to Ohio EPA or U.S. EPA; however, Plaintiffs attempt to expand the cause of action by ambiguously alleging that these violations occurred "on at least" these dates or were recurring.  Case law makes clear that a court's citizen suit subject matter jurisdiction is limited only to alleged violations for which specific dates are provided or are identifiable from documents cited by the Plaintiff that a defendant has provided to a regulatory agency.

## III.   LAW AND ARGUMENT

### A.   Plaintiffs' RCRA Claim Must Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

Under Rule 12(b)(6), HNCC and SunCoke seek dismissal of the RCRA claim for Plaintiffs' failure to state a claim upon which relief can be granted.  (Doc. No. 7 ¶¶ 222-228).  A court must dismiss a claim under Rule 12(b)(6) unless "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Zaluski v. United American Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007)). However, the court does not accept as true any bare assertions of legal conclusions nor unwarranted factual inferences. *Id.* Thus, "to survive a motion to dismiss, the 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).  Moreover, even though a court "must accept all well-pleaded factual

allegations in the complaint as true, [it] need not 'accept as true a legal conclusion couched as a factual allegation.'"  *Hensley Mfg., Inc. v. Propride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (*quoting Twombly*, 550 U.S. at 555).

## 1. The RCRA Imminent and Substantial Endangerment Provision Is Not Intended to Provide Plaintiffs with a Separate Enforcement Action for Alleged Violations of the Clean Air Act

Plaintiffs' RCRA imminent and substantial endangerment claim should fail because HNCC's coke oven emissions are hazardous air pollutants that are explicitly regulated under the Clean Air Act, 42 U.S.C. §7412.  Coke oven emissions are also not solid waste as defined by RCRA.  A review of RCRA's statutory history and U.S. EPA's limited authority to regulate hazardous waste incinerator air emissions under RCRA demonstrates that Congress never intended a RCRA enforcement action against alleged Clean Air Act emission violations from coke ovens.  Even if this Court assumes that all of Plaintiffs' factual allegations are true, this Court should dismiss the RCRA claim because it is based on a faulty legal argument and, thus, fails to state a claim upon which relief can be granted.

### a. Coke Oven Emissions Are Regulated Hazardous Air Pollutants Under the Clean Air Act

The Clean Air Act, 42 U.S.C. §7412, requires U.S. EPA to establish emission standards for major sources[4] that emit hazardous air pollutants that are listed under 42 U.S.C. §7412(b)(1). "Emissions standards promulgated under this subsection … require the maximum degree of reduction in emissions of the hazardous air pollutants subject to this section … that the

---

[4] A major source emits "10 tons per year or more of any hazardous air pollutant or 25 tons per year or more of any combination of hazardous air pollutants."  42 U.S.C. §7412(a)(1).

Administrator … determines is achievable for new or existing sources in the category or subcategory to which such emission standards applies.…" 42 U.S.C. §7412(d)(2).

Coke oven facilities are major sources and "coke oven emissions" *are explicitly listed as hazardous air pollutants* under this section.   42 U.S.C. §7412(b)(1).   Under the Clean Air Act Amendments of 1990, Congress directed U.S. EPA to promulgate rules that establish emission standards for coke ovens.   *See*, *e.g.*, 42 U.S.C. §7412(d)(8); 42 U.S.C. §7412(i)(8).   In promulgating these rules, U.S. EPA determined that non-recovery coke ovens constituted MACT for newly constructed coke ovens because the non-recovery process results "in significant reductions of emissions … [T]hese standards … essentially eliminate emissions of [benzene soluble organics] from coke plants if the standards are met by constructing nonrecovery coke oven batteries."  (Exhibit 1, 57 Fed. Reg. at 57556).

HNCC Works is a non-recovery coke oven facility and its coke oven emissions constitute the entire gas stream, which includes criteria pollutants, including carbon monoxide, lead, nitrogen dioxide, ozone, particulate matter, and sulfur dioxide, and hazardous air pollutants. HNCC's PTI defines the standards and limits for these coke oven emissions, which are regulated under MACT in 40 C.F.R. Part 63, Subpart L, and other federal and state regulations governing air emissions.  Moreover, the Ohio Air Pollution Control Act requires Ohio EPA to conduct a separate state-level review of hazardous air pollutants for all PTI applications.  Ohio Revised Code §3704.03(F).  Nowhere in HNCC's PTI is there any provision, standard, or limit, which imposes requirements under RCRA.[5]  Thus, these emissions are entirely regulated under the comprehensive regulatory scheme developed under the Clean Air Act and the Ohio Revised

---

[5] Ohio EPA's implementation of the RCRA regulations for solid and hazardous waste is found separately at Ohio Adm.Code 3745-50 through 3745-69.  These are complex and comprehensive regulations, which in no way deal with hazardous air pollution from coke ovens.

Code, **not RCRA**.  *Hackensack Riverkeeper, Inc. v. Delaware Otsego Corp.*, 450 F. Supp.2d 467, 484-87 (N.J. 2006) (granting Defendant's motion to dismiss RCRA claim that "emissions" from Defendant's operations constituted open dumping under RCRA).

> **b.**   **Coke Oven Emissions Are "Uncontained" Gases that Are Not Regulated Under the Definition of Solid Waste**

While coke oven emissions are regulated under the Clean Air Act, 42 U.S.C. §7412, these emissions are excluded under the definition of solid waste[6] because uncontained gas such as coke oven emissions are not hazardous or solid wastes under RCRA.  42 U.S.C. §6903(27). Here, Plaintiffs allege that they have been exposed to coke oven emissions, benzene emissions, haze, flue gas, coke oven emission constituents, and air toxins, which Plaintiffs allege are hazardous or solid waste.  (*See* Doc. No. 7, ¶ 1).  While the Clean Air Act does not define air emissions, U.S. EPA has defined this term as "gases and particles which are put into the air or emitted by various sources."  (*See*, Exhibit 5, http://www.epa.gov/air/oaqps/emissns.html).

RCRA's definition of solid waste could not be clearer in its common sense exclusion of air emissions from the definition of solid waste.  RCRA defines solid waste as "any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or **contained** gaseous material resulting from industrial … operations.…"  42 U.S.C. §6903(27) (emphasis added).  In *Helter v. AK Steel Corp.*, 1997 WL 34703718, *12 (S.D. Ohio March 31, 1997), the court granted Defendant's motion to dismiss, finding "no authority for Plaintiffs' position that the [coke oven gas] that leaked, in its gaseous form, from Defendant's pipe … was contained at the time when it became 'discarded.'  Absent such authority, the Court conclude[d] that the plain

---

[6] As a threshold matter, a hazardous waste must first be defined as a solid waste.  42 U.S.C. §6903(5).

language in 42 U.S.C. §9603(27) excludes the leaked [coke oven gas], in its gaseous form, from the definition of 'solid waste' and, thus, from RCRA's coverage." (*See*, *also*, Exhibit 6, Daniel H. Squire, THE RCRA PRACTICE MANUAL 20 (Theodore L. Garrett ed., 2d ed., ABA 2004) ("Although air emissions from industrial facilities may exhibit hazard [sic] characteristics and may be viewed as 'wastes,' they ordinarily would not be 'solid wastes' within the meaning of RCRA, thus avoiding an overlap in the Clean Air Act and RCRA regulatory programs")).  This Court should grant Defendant's Motion because, like coke oven gases leaking from a pipe, coke oven emissions are not contained gases and are not regulated as solid waste under RCRA.

Although the court in *Helter* allowed minimal RCRA claims regarding coke oven gas "residue" to survive a Rule 12(b)(6) motion, this Court should not adopt this reasoning because it would be inconsistent with Congress' intent in enacting RCRA and U.S. EPA's own interpretation of how RCRA interacts with the Clean Air Act.  As discussed below, Congress intended RCRA to complement the regulation of air and water by regulating the disposal of solid waste.  This is evident as Congress explicitly regulated air pollution control waste under RCRA by including "sludge from a[n] … air pollution control facility" while excluding uncontained gaseous particulate released from a source.  42 U.S.C. §6903(27).  (*See*, *also*, Exhibit 6, Daniel H. Squire, THE RCRA PRACTICE MANUAL 21 (noting that the Clean Air Act and RCRA overlap in that the Clean Air Act requires a source to install air pollution controls to reduce air emissions and then requires disposal of those wastes in compliance with RCRA once they are collected in air pollution control devices)).  U.S. EPA's own publication demonstrates that the various environmental statutes were intended to "work together to address hazardous waste problems [by] include[ing] ***media-specific statutes that limit the amount of waste released into a particular environmental medium***." (*See* Exhibit 7, U.S. EPA Office of Solid Waste, RCRA

ORIENTATION MANUAL VI-6 (2008) (emphasis added)).  U.S. EPA acknowledges that while RCRA addresses solid wastes such as pollution control sludge, the Clean Air Act addresses emissions from sources, including particulate matter.  *Id.* at VI-3.  Thus, if this Court adopts an argument that emissions constitute solid waste, this Court would allow regulation of emissions from ***all*** air pollutant sources under the purview of RCRA because all gas emissions contain some form of particulate.  This is not consistent with U.S. EPA's own interpretation of the environmental laws and, this was not the intent of Congress when it enacted RCRA.

> **c.     RCRA Constitutes One Separate Component of a Tripartite Statutory Scheme Designed to Protect the Air, the Water, and the Land**

By 1977, Congress had enacted the Clean Air Act and the Clean Water Act.  However, Congress had not addressed the increasing amount of solid and hazardous waste being dumped into unregulated landfills.  (*See*, Exhibit 8, H.R. Rep. No. 94-1491, at 2, *reprinted in* 1976 U.S.C.C.A.N. 6238, 6238).  By enacting RCRA, the House Interstate and Foreign Commerce Committee noted that RCRA "eliminate[d] the last remaining loophole in environmental law, that of unregulated land disposal of discarded materials and hazardous wastes.… [T]he federal government is spending billions of dollars to remove pollutants from the air and water, only to dispose of such pollutants on the land in an environmentally unsound manner.…  This legislation will … permit the environmental laws to function in a coordinated and effective way."  *Id.* at 4, *reprinted in* 1976 U.S.C.C.A.N. at 6241-42.

As evidence of Congress' intent to regulate air, water, and the land independently but concurrently, Congress enacted a RCRA provision entitled "Integration with other Acts," which requires U.S. EPA to "integrate all provisions of this chapter ***for purposes of administration and***

*enforcement*[7] and ***shall avoid duplication, to the maximum extent practicable***, with the appropriate provisions of the Clean Air Act....." (emphasis added).  42 U.S.C. §6905(b)(1).  As demonstrated below, where U.S. EPA has the authority to regulate hazardous waste incinerator air emissions, it has relied on this provision to ensure that the regulation of these emissions under RCRA is not duplicative of any regulation under the Clean Air Act.

> **d.**   **Where Congress Intended Regulation of Air Emissions Under RCRA, It Explicitly Limited that to Hazardous Waste Incinerators**

In only one specific instance under RCRA did Congress explicitly provide U.S. EPA regulatory authority over air emissions of hazardous waste treatment, storage, and disposal facilities.  42 U.S.C. §6924(n).  In addition, Congress made it explicit that U.S. EPA's regulatory authority of air emissions should not be duplicative of the regulation of hazardous air pollutants under MACT in the Clean Air Act.  Thus, where Congress wished to authorize the regulation of air emissions under RCRA, Congress "knew how to do so and did so explicitly."  *First American Title Company v. Devaugh*, 480 F.3d 438, 452-53 (6th Cir. 2007).

In 1991, U.S. EPA promulgated rules that regulated hazardous waste incinerator air emissions.  (*See*, Exhibit 9, Burning of Hazardous Waste in Boilers and Industrial Furnaces; Final Rule, 56 Fed. Reg. 7134 (Feb. 21, 1991)).  U.S. EPA promulgated these rules one year after the enactment of the Clean Air Act Amendments to the MACT standards and prior to U.S. EPA's promulgation of the MACT standards for hazardous waste incinerators.  While U.S. EPA

---

[7] HNCC and SunCoke are unable to find any federal enforcement case where the government brought an enforcement action under both RCRA and the Clean Air Act for emission violations.  *U.S. v. Marine Shale Processors*, 81 F.3d 1329 (5th Cir. 1996), is a representative enforcement case.  In that case, the United States brought enforcement actions against Defendant under both RCRA and the Clean Air Act.  The RCRA enforcement action involved Defendant's placing of "material coming out of its kiln system on the ground," which leached "toxic metals in excess of the regulatory limits."  *Id.* at 1339-40.  The Clean Air Act enforcement action involved alleged exceedances of air emission limits in its kiln stack permit.

had limited regulatory authority under RCRA to regulate hazardous waste incinerator air emissions, the MACT standard amendments explicitly required, "[i]n the case of any category or subcategory of sources the air emissions of which are regulated under [RCRA], the Administrator … shall, to the maximum extent practicable and consistent with the provisions of this section, ensure that the requirements of [RCRA] and this section are consistent." 42 U.S.C. §7412(n).

In 2005, U.S. EPA promulgated MACT standards for hazardous waste incinerators. (*See* Exhibit 10, National Emission Standards for Hazardous Air Pollutants: Final Standards for Hazardous Air Pollutants for Hazardous Waste Combustors, 70 Fed. Reg. 59402 (Oct. 12, 2005)). U.S. EPA announced, pursuant to RCRA's Integration with other Acts provision, 42 U.S.C. §6905(b)(1), that the 1991 "***RCRA regulations no longer apply once a facility demonstrates compliance with the MACT standards*** in subpart EEE and any duplicative requirements have been removed from the RCRA permit." *Id.* at 59523 (emphasis added). Thus, although RCRA granted limited authority over air emissions, U.S. EPA made sure to avoid duplicative regulations of hazardous waste incinerator emissions under the two statutes.

In summary, Plaintiffs base their RCRA citizen suit on alleged coke oven emission violations from HNCC Works. As demonstrated above, these emissions are regulated under the Clean Air Act and HNCC's PTI. These coke oven emissions are not solid waste under RCRA and to treat these emissions as such would constitute duplicative enforcement, against which Congress cautioned. Thus, this Court should dismiss Plaintiffs' RCRA claim because it fails to state a claim upon which relief can be granted.

    2.    **Allegations of Past Violations Without Any Basis to Demonstrate an Ongoing Threat Fails to Satisfy the Imminent and Substantial Endangerment Standard**

Under RCRA, a private party may only file a citizen suit upon a showing that the solid or hazardous waste at issue "may present an imminent and substantial endangerment to health or environment."  42 U.S.C. 6972(a)(1)(B).  As some courts have noted, when there are past discharges of pollutants into the water or air, the "*damage is evanescent*," thereby making it impossible to grant any injunctive relief because the pollutants no longer constitute an imminent threat.  *See, Fallowfield Development Corp. v. Strunk*, 1990 WL 52745, *10 (E.D. Penn. April 23, 1990) (emphasis added).  In contrast, when solid or hazardous waste is disposed of on the ground, "the hazardous waste remains on that property insidiously infecting the soil and groundwater aquifers.… Thus, *while the discharge of a pollutant into the water or air normally disperses or dissipates, making cleanup difficult or impossible, the improper disposal of hazardous waste remains a remediable threat*."  *Id.* (emphasis added).

Based on this distinction, the Supreme Court has concluded that there is no remedy under 42 U.S.C. 6972(a)(1)(B) when the contamination is wholly past and no longer presents an imminent endangerment to health or the environment.  *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 485 (1996) ("[t]he meaning of this timing restriction is plain: An endangerment can only be 'imminent' if it 'threaten[s] to occur immediately' … and the reference to waste which 'may present' imminent harm quite clearly excludes waste that no longer presents such a danger").  Here, Plaintiffs fail to identify any facts that, even if assumed true, demonstrate that the alleged emission violations currently present an imminent and substantial endangerment to Plaintiffs or the environment.

In *Chemical Weapons Working Group, Inc. v. U.S. Dept. of Defense*, 61 Fed. Appx. 556 (10th Cir. 2003),[8] the Tenth Circuit found that unsubstantiated allegations of future harm was insufficient to establish the imminent and substantial endangerment provision and upheld the district court's dismissal of the imminent and substantial endangerment claim.  Plaintiffs filed a citizen suit under 42 U.S.C. §6972(a), alleging past violations at a hazardous waste facility were causing an imminent and substantial endangerment.  *Id.* at 558.  The Tenth Circuit found:

> Imminent harm by definition will occur almost immediately if action is not taken to prevent it.… A vague possibility of future harm cannot satisfy the statute, which applies to dangers that are both "imminent and substantial".… For example, the appellants assert in their third amended complaint that ***"it is expected that such incidents will continue to occur," … an open-ended allegation that simply does not satisfy the standards in RCRA.***

*Id.* at 561 (emphasis added).

The allegations in Plaintiffs' complaint are indistinguishable from *Chemical Weapons Working Group, Inc.*  Plaintiffs make allegations that bypass venting, or deposits occurred multiple times since 2005.  (*See* Doc. No. 7, ¶¶ 74-80).  Plaintiffs allege no facts to demonstrate that the alleged coke oven emissions are present, thereby causing an imminent and substantial endangerment.  Instead, Plaintiffs only assert "vague possibilities" of future harm.  (*See* Doc. No. 7, ¶¶ 75, 80, 226) ("The Facility's operations have and continue to cause Plaintiffs and other area residents to be repeatedly exposed"; "the Facility … has emitted and continues to release Visible Deposits"; "[e]ach Defendant's violation of the RCRA endangerment prohibition is … ongoing")).  While a party may bring a citizen suit under 42 U.S.C. §6972(a)(1)(B) for past violations that pose an imminent and substantial endangerment, simply positing a conclusion that past violations are "ongoing" is insufficient to satisfy the "imminent and substantial

---

[8] This case involved allegations of a hazardous solid waste release; it did not involve alleged RCRA violation due to air emissions.

endangerment" prong under RCRA and, therefore, this Court should dismiss Plaintiffs' RCRA claim. *Chemical Weapons Working Group, Inc.*, 61 Fed. Appx. at 561; *see*, *also*, *Harris Bank Hinsdale, N.A. v. Suburban Lawn, Inc.*, 1992 WL 396295, *3-4 (N.D. Ill. Dec. 22, 1992) ("the letter fixes the time when an endangerment existed as April 10, 1992.  The complaint was not filed until October 9, 1992.  Thus, the notice letter would independently fail to allege the existence of an imminent and substantial endangerment at the time the complaint was filed").

> **B.    This Court Must Dismiss Plaintiffs' Alleged Violations Under RCRA and the Clean Air Act for Lack of Subject Matter Jurisdiction Where Plaintiffs Fail to Strictly Comply With Citizen Suit Notice Requirements**

Rule 12(b)(1) allows a litigant to dismiss a claim for lack of subject matter jurisdiction. If a defendant challenges subject matter jurisdiction, the plaintiff has the burden of proving subject matter jurisdiction exists.  *See Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 103-04, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Rogers v. Statton Indus.*, 798 F.2d 913, 915 (6th Cir 1986).  In ruling on Rule 12(b)(1) motion, the Court "is empowered to decide factual disputes" and may consider documents outside the pleadings.  *See Rogers*, 798 F.2d at 915-16.  Thus, "the Court may consider matters outside the pleadings, such as" notice letters required by citizen suit provisions in federal environmental protection statutes in ruling on a Rule 12(b)(1) motion.  *See Freeman v. The Cincinnati Gas & Elec. Co.*, 2005 WL 1669324, *2 (S.D. Ohio July 18, 2005); *Sierra Club Ohio Chapter v. City of Columbus*, 282 F. Supp. 2d 756, 761 n.6 (S.D. Ohio 2003); *Frilling v. Honda of Am. Mfg. Inc.*, 1996 WL 1619348, at *1 (S.D. Ohio Oct. 21, 1996).

   1.   **The Clean Air Act's and RCRA's Citizen Suit Notice Provisions Require Plaintiffs to Identify the Specific Dates of Alleged Violations**

The citizen suit notice provision of the Clean Air Act, 42 U.S.C. §7604(b)(1), provides in relevant part, that "[n]o action may be commenced − under subsection (a)(1) unless (A) prior to 60 days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order."  S*ee* 42 U.S.C. §7406(b)(1)(A).  RCRA requires that notice be provided at least 90 days before commencing an action.  *See* 42 U.S.C. §6972(b)(2)(A).

The Clean Air Act also requires that the notice must be provided in the manner that federal regulations specify.  42 U.S.C. §7406(b).  The applicable regulation states "[n]otices to the Administrator, States, and alleged violators regarding violation of an emission standard or limitation  . . . shall include sufficient information to permit the recipient to identify the specific standard [or] limitation, … which has allegedly been violated, the activity alleged to be in violation, the person or persons responsible for the alleged violation, the location of the alleged violation, *the date or dates of such violation*, and the full name and address of the person giving the notice."  40 C.F.R. §54.3(b) (emphasis added).  The RCRA notice requirement is similarly worded.  *See* 40 CFR §254.3(a).

By limiting Plaintiffs' claims to alleged violations based on specific dates in the pre-suit notice letter or in documents cited by Plaintiffs that HNCC submitted to Ohio EPA or U.S. EPA, the Court will ensure the integrity and fulfill the purpose of the Clean Air Act's and RCRA's citizen suit notice requirements.   The purpose of these notice provisions is: (1) to allow governmental agencies to assume enforcement of environmental laws; and (2) to provide alleged

violators the chance to come into compliance, potentially rendering the suit unnecessary.  *See Freeman*, 2005 WL 1669324, *2 (*citing Hallstrom*, 493 U.S. at 31).

> **2.      Strict Compliance With the Clean Air Act's and RCRA's Citizen Notice Provision to Provide the Specific Dates of Alleged Violations Is a Mandatory <u>Jurisdictional Prerequisite</u>**

The United States Supreme Court, the Sixth Circuit, and this Court require strict compliance with the Clean Air Act's and RCRA's citizen suit notice provisions as "'a mandatory jurisdictional prerequisite to maintaining suit under the CAA and similar environmental laws.'" *Freeman v. The Cincinnati Gas & Elec. Co.*, 2005 WL 1669324, *2 (S.D. Ohio 2005) (*quoting National Parks Conservation Ass'n, Inc. v. TVA*, 175 F. Supp. 2d 1071, 1077 (E.D. Tenn. 2001)); *see also Hallstrom*, 493 U.S. at 31, 107 L.Ed.2d 237, 110 S.Ct. 304 (1989) (compliance with RCRA's notice "requirements are mandatory conditions precedent to commencing suit under the RCRA citizen suit provision"); *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 475 (6th Cir. 2004) (a citizen suit under the Clean Air Act may not be commenced without satisfying the mandatory notice requirements); *Sierra Club Ohio Chapter v. City of Columbus*, 282 F. Supp. 2d 756, 763 (S.D. Ohio 2003) (observing that the Sixth Circuit requires strict compliance with notice provisions as a "'jurisdictional prerequisite' to maintaining a citizen law suit"); *Frilling v. Honda of Am. Mfg. Inc.*, 1996 WL 1619348, *2 (S.D. Ohio Oct. 21, 1996).

Courts routinely dismiss entire citizen suits or exclude certain claims or violations for lack of subject matter jurisdiction where the notice fails to identify specific dates on which alleged violations occurred.  *See Atl. States Legal Found. v. United Musical Instruments*, 61 F.3d 473, 478 (6th Cir. 1995) ("the district court lacked subject matter jurisdiction over alleged 1991 violation because ALSF failed to provide adequate pre-suit notice as required by EPCRA"); *Freeman*, 2005 WL 1669324, *4-6 (dismissing citizen suit for lack of subject matter jurisdiction,

finding allegations of "'ongoing' or 'continuing'" violations insufficient to allow a defendant to pinpoint the date or dates of the alleged violations); *Frilling*, 1996 WL 1619348, *5-7 (holding that undefined allegations of continuous, nearly daily and intermittent violations "insufficient to allow the Defendant to identify the date or dates of said violations"); *National Parks Conservation Ass'n, Inc. v. TVA*, 175 F. Supp. 2d at 1077  (asserting that allegations "that TVA has 'regularly violated' the standard 'for at least the last five years' … has simply not provided the specificity" required under the Clean Air Act citizen suit notice provision); *Helter*, 1997 WL 34703718, *10 ("Plaintiffs' citizen suit notice letter … gives notice of only one specific violation: the January 1996 [Coke Oven Gas] leak.  Plaintiffs' citizen suit pursuant to 42 U.S.C. §6972(a)(1)(B) is, therefore, limited to a claim based upon that violation").

However, courts acknowledge the potential sufficiency of notice when plaintiffs allege violations by citing in their notice to documents submitted to regulatory agencies by the defendant. *Freeman*, 2005 WL 1669324, *3 (c*iting Friends of Frederick Seig Grove 94 v. Sonoma County Water Agency*, 124 F. Supp. 2d 1161, 1168-69 (N.D. Cal. 2000);  s*ee also Frilling*, 1996 WL 1619348, *7 n. 18 (holding that the plaintiffs' notice letter sufficiently identified the dates of three purported violations based on reports to which plaintiffs cited in their pre-suit notice).

> **3.      This Court Must Dismiss the Claims in Plaintiffs' First Amended Complaint Where Plaintiffs Fail to Provide Notice of Any Dates of the Alleged Violations as Shown in Table 1 of Defendants' Motion**

Plaintiffs' pre-suit notice letter is insufficient to put any regulatory agency, HNCC, or SunCoke on notice of the dates of alleged violations underlying their Clean Air Act claims in their First and Third Causes of Action, and their RCRA claim under the Fourth Cause of Action. Because of the length and complexity of the Complaint and notice letter, the paragraphs of Plaintiffs' First Amended Complaint and associated pages of their related pre-suit notice letter

for which Plaintiffs provide no dates of alleged violations are summarized in Table 1.  As a matter of law, these portions of Plaintiffs' complaint must be dismissed for lack of subject matter jurisdiction.  (*See* Doc. No. 7, ¶¶ 146-153; 193-196; 222-228).

> **4.    This Court's Subject Matter Jurisdiction Over Plaintiffs' Complaint Is Limited to Claims and Alleged Violations Summarized in Table 2 Where the Dates Are Identified in the Pre-suit Notice or in Documents That HNCC Submitted to Ohio EPA or U.S. EPA**

Plaintiffs attempt to expand this Court's subject matter jurisdiction by using undefined, unnamed violations, or vague and ambiguous terms such as "for at least," "on at least," "recurring," and "intermittent."  Courts have previously indicated that it has subject matter jurisdiction only over those alleged violations for which plaintiffs provide dates in their pre-suit notice or where defendants can identify dates from documents cited by Plaintiffs that defendants submitted to a regulatory agency.  Table 2 of the Motion summarizes Plaintiffs' Complaint where one or more dates can be identified in either their pre-suit notice letter or in documents submitted by HNCC to Ohio EPA and U.S. EPA; however, Plaintiffs attempt to expand these claims by vaguely alleging that these violations are recurring or occurred "on at least" those specific dates.

One example shown in Table 2 is Plaintiffs' allegation that HNCC Works exceeded its waste gas stack $SO_2$ emission limits.  Although Plaintiffs cite to documents submitted to Ohio EPA or U.S. EPA, they ambiguously assert that waste gas stack $SO_2$ emission limits were violated on other, unnamed dates by asserting that these alleged violations occurred  "***for at least***" 10 fiscal quarters since 2006 for P901 and "***for at least***" 2 fiscal quarters since 2008 for P902.  Plaintiffs' cannot use ambiguous terms such as "***for at least***" to expand the Court's subject matter jurisdiction.  *See Freeman*, 2005 WL 1669324, *4-6; *Frilling*, 1996 WL 1619348, *5-7; *National Parks Conservation Ass'n, Inc. v. TVA*, 175 F. Supp. 2d at 1077; *Helter*, 1997 WL 34703718, *10.

Plaintiffs have failed to satisfy the pre-suit notice requirements for portions of their complaint as summarized in Table 2. Thus, this Court should limit its subject matter jurisdiction over the claims in Table 2 only to those alleged violations where the dates are identifiable either in the pre-suit notice or in documents that HNCC submitted to an agency. (*See* Doc. No. 7, ¶¶ 120-129; 130-136; 142-145; 159-162; 163-167; 168-176; 177-180; 181-184; 185-188; 189-192; 197-200; 201-203; 204-213; 214-221; 222-228).

## IV.   CONCLUSION

For the reasons stated above, this Court should grant HNCC and SunCoke's Partial Motion to Dismiss.

*s/ Louis E. Tosi*
Louis E. Tosi, *Trial Attorney* (0019756)
Michael A. Snyder (0069425)
Michael J. Podolsky (0075711)
**SHUMAKER, LOOP & KENDRICK, LLP**
North Courthouse Square
1000 Jackson Street
Toledo, Ohio 43604
Telephone:  419-241-9000
Fax:  419-241-6894
Email: ltosi@slk-law.com
Email: msnyder@slk-law.com
Email: mpodolsky@slk-law.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to D. David Altman, daltman@environlaw.com; Amy M. Hartford, ahartford@environlaw.com; Brett A. Kravitz, bkravitz@environlaw.com; Amy J. Leonard, aleonard@environlaw.com; and Justin D. Newman, jnewman@environlaw.com by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_s/ Louis E. Tosi_
Louis E. Tosi, *Trial Attorney* (0019756)
**SHUMAKER, LOOP & KENDRICK, LLP**
Attorneys for Defendants