# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

GLENN GRAFF, et al.,                    Case No. 1:09-cv-670
     Plaintiffs

                                           Dlott, J.

vs                                      Litkovitz, M.J.

HAVERHILL NORTH                         **ORDER**
COKE COMPANY, et al.,
     Defendants

This matter is before the Court on plaintiffs' motion to vacate confidentiality designations (Doc. 214), defendants' memorandum in opposition (Doc. 217), and plaintiffs' reply memorandum. (Doc. 224).

The Protective Order in this case governs the designation of confidential materials produced in discovery. A party may unilaterally designate for "confidential" treatment under the Protective Order any document, testimony or other information that the producing party certifies in good faith considers to be:

(a) Confidential research, development, or commercial information not accessible to the public;

(b) Information that would qualify as a trade secret under Ohio Revised Code § 1333.61(D) or federal law;

(c) Information that contains highly private, individual information protected by law from disclosure, and any individual's medical information, including medical records; or

(d) Information that may cause serious competitive injury to the producing party by virtue of that document's disclosure to another party or third party,

provided that said designated information listed in (a) through (d) of this paragraph has been maintained as confidential, will be reasonably protected as confidential in the future, and is otherwise not available to the public.

(Doc. 66, ¶ 2). Information constituting emissions data, as defined in the Clean Air Act, 42

U.S.C. § 7414, and its implementing regulations, 40 C.F.R. § 2.301(a)(2)(i), may not be

designated confidential in the first instance and will not be treated as confidential under the

Protective Order. (Doc. 66, ¶ 3). The Protective Order also governs challenges to confidential

designations:

> This Protective Order is entered based on the representations and agreements of the
> parties and for the purpose of facilitating discovery. Nothing herein shall be
> construed or presented as a judicial determination that any documents or information
> designated "Confidential" by counsel or the parties is subject to protection under Fed.
> R. Civ. P. 26(c) or otherwise until such time as the Court may rule on a specific
> document or issue. During the pendency of this action, when any document,
> testimony or other information is designated "Confidential," any party objecting to
> the designation of such material as "Confidential" may, after making a good faith
> effort to resolve any such objection, move for an order from this Court vacating the
> designation. . . . The producing party shall have the burden of persuading the Court
> that good cause exists for the designation of the material as Confidential Material.

(*Id.*, ¶ 16).

Plaintiffs seek an Order vacating the confidentiality designations made in connection with

the deposition of Haverhill General Manager John Essman, arguing they are overbroad and do

not qualify for confidential protection under Paragraph 2 of the Protective Order. Plaintiffs have

provided numerous examples of deposition testimony and exhibits designated as confidential by

defendants for purposes of illustrating the overbreadth of defendants' designations. Plaintiffs

assert that resolution of the confidentiality designations in the Essman deposition will provide

guidance to the parties with respect to other confidentiality designations challenged by plaintiffs.

Rule 26 provides that the Court may, for good cause shown, issue a protective order

"requiring that a trade secret or other confidential research, development, or commercial

information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

2

The Court is mindful that its discretion to issue protective orders is "limited by the careful

dictates of [Rule] 26 and 'is circumscribed by a long-established legal tradition' which values

public access to court proceedings." *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219,

227 (6th Cir. 1996) (citing *Brown & Williamson Tobacco Corp. v. Fed. Trad. Comm'n,* 710 F.2d

1165, 1177 (6th Cir. 1983)). "[A]n order allowing parties to keep their trade secrets, confidential

research, or other commercial information out of the public record may be valid if parties can

demonstrate that they understand the concept of confidential information, are acting in good faith

in designating parts of the record as such, and the order provides an opportunity for any party or

an interested member of the public to challenge the confidentiality designation." *Certain*

*Underwriters at Lloyd's v. U.S.*, No. 2:08-cv-841, 2010 WL 2683142, at *1 (S.D. Ohio July 1,

2010) (citing *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945-46

(7th Cir. 1999)). Under the explicit terms of the Protective Order, defendants – as the

designating parties – bear the burden of showing good cause that the challenged information is

entitled to protection under Rule 26(c)(1)(G). (Doc. 66, ¶ 16). *See also Nix v. Sword*, 11 F.

App'x 498, 500 (6th Cir. 2001). "To show good cause, a movant for a protective order must

articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery

sought and cannot rely on mere conclusory statements." *Nix*, 11 F. App'x at 500 (quoting

*Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)) (citations omitted)). *See also Bds. of*

*Trustees of Ohio Laborers' Fringe Ben. Programs v. A2 Services, LLC*, No. 2:13-cv-476, 2013

WL 5723069, at *2 (S.D. Ohio Oct. 18, 2013) (protection denied where party seeking protective

order offered only conclusory statements unsupported by specific evidence of a clearly defined

and serious injury caused by discovery sought); *Solar X Eyewear, LLC v. Bowyer,* No. 1:11-cv-

3

763, 2011 WL 3921615, at *2 (N.D. Ohio Sept. 7, 2011) (merely alleging potential disclosures of trade secrets insufficient). *Cf. U.S. ex rel. Daugherty v. Bostwick Laboratories*, No. 1:08-cv-354, 2013 WL 3270355, at *3 (S.D. Ohio June 26, 2013) (addressing good cause showing in context of attorney-eyes-only protective order requiring "particular and specific demonstration of fact"). The fact that a party may deem certain business information as sensitive does not, in itself, justify a withholding from the public record. Rather, the party must demonstrate that the information qualifies as "confidential . . . commercial information" entitled to protection under Rule 26(c)(1)(G). *Charvat v. EchoStar Satellite, LLC*, 269 F.R.D. 654, 656 (S.D. Ohio 2010) (noting the absence of any affidavit establishing efforts to maintain confidentiality of information).

The focus of the confidentiality designations in the Essman deposition transcript and exhibits is on the provision of the Protective Order governing "[c]onfidential research, development, or commercial information not accessible to the public." (Doc. 66, ¶ 2(a)). Defendants bear the burden of demonstrating that the information sought to be protected is "research, development, or commercial information" that is "not accessible to the public" and articulating the specific injury that would likely result from disclosure thereof. (*Id.*)

## I. ESSMAN TRANSCRIPT

As an initial matter, defendants appear to argue that plaintiffs' challenges to the confidentiality designations at the discovery phase of this case are premature and should be left for resolution at trial. The Court disagrees. The Protective Order sets forth a specific mechanism for challenging improvidently made confidentiality designations and plaintiffs have availed themselves of this procedure. This matter is therefore ripe for resolution.

Defendants argue that much of the material challenged by plaintiffs is confidential

commercial information that, if disclosed, could give competitors an advantage by gaining a

detailed understanding of the inner workings or defendants' business. Their memorandum states:

> Defendants conduct business in a highly competitive industry. They operate a state-of-the-art facility, and employ proprietary technology, operating methods, and equipment that provide an advantage over their competitors. Pursuing continual innovation has allowed Defendants to become a technological leader in their industry, and the equipment and operational approach they use cannot be found elsewhere. Defendants hold numerous patents for, among other things, heat recovery coke design and operation, pollution control systems, oven pushing and charging mechanisms, and oven flue gas control mechanisms.

> The testimony and exhibits challenged by Plaintiffs involve detailed, specific discussions of the facility's operational capabilities, ongoing research and development projects, capital expenditures, financial information, and other confidential commercial information.

(Doc. 217 at 2).

The Court does not doubt that in any highly competitive industry the disclosure of

research and development projects, operational approaches, specialized equipment, and financial

information to a competitor has the potential to cause commercial harm and may entitle such

information to confidentiality protection. The problem here is that defendants have not

articulated specific facts or presented evidence showing the particular injury they would suffer

with respect to the challenged designations, as opposed to making general assertions of

commercial harm. Nor have defendants demonstrated that any steps have been taken to protect

this information from disclosure to the public. In fact, as discussed herein, much of the

information deemed "confidential" by defendants is already in the public domain. The mere fact

that testimony or exhibits may refer to "state-of-the-art" equipment or processes, without more,

does not persuade the Court that such testimony or exhibits are entitled to confidential treatment.

Defendants must also show that the information they seek to protect has been maintained as

5

confidential, will be reasonably protected as confidential in the future, and is otherwise not available to the public. (Doc. 66, ¶ 2).

Defendants' memorandum states they "certify in good faith that such information is confidential research, development, or commercial information, trade secrets, and/or information that may cause serious competitive injury to Defendants if disclosed, and that all such information has been and will be reasonably protected from public disclosure by Defendants." (Doc. 217 at 7). The Court cannot accept this "certification" because it does not hold true for many of the deposition designations and exhibits marked as confidential by defendants, calling into question the accuracy of the "certification." The Court notes that defendants initially designated the majority of the Essman transcript for confidential treatment, yet subsequently withdrew the confidential designations for numerous portions of the transcript, which indicates an initial failure to carefully consider and certify only those portions that clearly qualify for confidential treatment under the Protective Order. *See* Defendants' Withdrawal of Confidentiality Designations (Doc. 217 at 8-11) for the following: Page 63 (line 21) to page 64 (line 15); Page 95 (line 25) to page 96 (line 17); page 119, lines 2-14; page 121, lines 6-23; page 122, lines 13-15; Page 159, lines 1-9; Page 159, lines 17-22; Page 168 (line 23) to page 169 (line 3); Page 183, lines 8-23; Page 187 (line 19) to page 188 (line 2); Page 208, lines 9-18; Page 211 (line 24) to page 212 (line 7); and Page 212 (line 21) to page 213 (line 10).

In addition, the initial designation for confidential treatment information that is already in the public domain, although subsequently withdrawn by defendants, nevertheless calls into question defendants' understanding and use of the term "confidential" and their good faith representation that such information has not been publicly disclosed. For example, defendants

initially designated as confidential testimony relating to a stack failure that was discussed at a public meeting of Citizens Advisory Panel (Page 119, lines 2-14), the use of special cameras by the Environmental Protection Agency (EPA) to monitor stack emissions (Page 208, lines 9-18), the identification of chemicals released during a stack collapse (Page 121, lines 6-23 (which is specifically excluded from protection under the Protective Order as emissions data)), and even the identity of SunCoke's CEO (Page 122, lines 13-15), demonstrating the breadth of defendants' over-designation of testimony for confidential treatment without meeting the terms of the Protective Order.

Likewise, defendants designate as confidential portions of the Essman transcript discussing Exhibit 5 to the deposition (which itself is not designated as confidential), which concerns specific information about a malfunction event with the dump condenser that was shared with the Director of the Ohio EPA. (Doc. 224, Exh. C). This is a matter of public record that is not entitled to protection under the Protective Order despite defendants' assertions that such testimony "discusses the equipment and technology used by the facility, including the design and operation of such equipment." (Doc. 217 at 9). At this stage of the litigation, where the confidentiality designations have been specifically challenged by plaintiffs, defendants must articulate specific facts showing the steps taken to maintain the confidentiality of such information and the clearly defined and serious injury they would suffer if such information is disclosed. *See Nix*, 11 F. App'x at 500; *A2 Services, LLC*, 2013 WL 5723069, at *2. Their failure to do so in this case requires plaintiffs' challenges to the confidentiality designations to be sustained. Therefore, defendants' confidentiality designations to the Essman deposition in their entirety are hereby VACATED.

7

Nevertheless, the Court is mindful that the Essman deposition is only one of several depositions to be taken in this case, portions of which may also be designated as confidential. In in an effort to give the parties guidance on future disputes over confidentiality designations, the Court shall examine the particular designations at issue in the Essman deposition.

A. **Testimony Related to Proposed Consent Decree**

**(1) 9:25-10:20** -- This testimony discusses a proposed consent decree entered into by defendants and the United States EPA to resolve notices of violations. This specific testimony concerns the deponent's role and understanding of the proposed consent decree. Defendants have designated this testimony as confidential because it "discusses [the] roles and actors regarding privileged negotiations with the United States to resolve notices of violation through a consent decree." (Doc. 217 at 8). This testimony, and testimony like it, would not be protected as confidential settlement negotiations as defendants assert. As this Court has already explained in its November 13, 2012 Order, "[I]n order for a statement or document to be entitled to protection from disclosure under the settlement privilege recognized in *Goodyear* [*Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003)], two requirements must be satisfied: (1) the statement or document must qualify as a 'communication,' *i.e.*, a document or statement exchanged between the parties during settlement negotiations, and (2) the document must have been authored or created for the purpose of settlement negotiations." (Doc. 188 at 61-62). An individual's "role" and "understanding" of a consent decree do not qualify as a "communication" exchanged between the parties that is entitled to protection under the settlement privilege. Therefore, this testimony and testimony like it would not be protected.

**B. Testimony Related to Information in the Public Record or Accessible to the Public[1]**

(1) **55:10-17** -- This testimony discusses the hours of plant operation and staffing, which is a matter of public record. (Doc. 224, Exh. C). It does not qualify as confidential under the Protective Order despite defendants' assertion that it discusses confidential business practices, disclosure of which would provide competitors with details regarding, for example, production capabilities of the facility.

(2) **111:23-112:14**– This testimony discusses a stack collapse at Haverhill and the cause thereof. This is public knowledge and was shared by defendants with the Ohio EPA. (Doc. 224, Exh. E). It is not confidential under the Protective Order despite defendants' assertion that it "discusses the equipment and technology used by the facility, including specific performance details of such equipment and technology."

(3) **93:22-94:8** – This testimony discusses the specific equipment that existed during Phase 2 and is a matter of public record that can be gleaned from the facility's permits. Also, once "confidential development plans" come to fruition, *i.e.,* publicly known, they are no longer confidential. This testimony is not entitled to confidentiality protection.

(4) **100:4-24** -- This testimony discusses a fabrication error on two pieces of equipment that had to be fixed by the manufacturer. This information was shared with the Ohio EPA and is a matter of public record or publicly accessible. (Doc. 224, Exh. D). It is not confidential despite defendants' assertion that it "discusses the equipment and technology used by the facility,

---

[1]The term "accessible to the public" means information that is actually in a public record or is otherwise available to the public which cannot be designated as confidential under the Protective Order.

including the design and operation of such equipment." (Doc. 217 at 9).

(5) **112:20-118:5** -- This testimony relates to the chlorine content of coal and the purpose of a baghouse, which is publicly known or available; defendants have not shown how this information qualifies for confidential protection.

(6) **127:23-25** -- This testimony discusses the results of a consultant's modeling report that were shared with the Ohio EPA for validation and approval. (Doc. 224, Exh. F). As publicly available information, it is not confidential despite defendants' characterization of the report as "confidential" and assertion that the report concerns the design and operation of facility equipment.

(7) **128:9-130:6** -- While this testimony discusses facility design and equipment capabilities and the facility's revenue generating activities, plaintiffs have shown that the information about the number of HRSGs and the fact that the facility generates steam or electricity for sale is publicly available and has been disclosed to the U.S. Securities and Exchange Commission in SunCoke's public 10-K filing. (Doc. 224, Exh. G). It is not entitled to confidentiality protection.

C. <u>**Information Relating to the Administration of the Deposition**</u>

(1) **123:20-124:2** –This testimony discusses information relating to the administration of the deposition, such as changing the videotape. Defendants concede this information is not confidential, but was redacted where such information coincided with information that is confidential for ease of blocking out portions of the transcript. Given defendants' over-designations of the transcript, this testimony and testimony like it should not be redacted.

10

D. __Testimony on Design Problems and Improvements__

(1)  **103:13-107:18, 110:2-111:22** -- This testimony discusses the problems with a

particular piece of equipment and resulting emissions, whether or not litigation occurred over this

issue, and the fact that this problem is still unresolved.  Defendants assert this testimony is

protected as confidential because it discusses the equipment and technology used by the facility,

including specific performance details of such equipment and technology, and includes research

and development plans and reports regarding the same.  Plaintiffs assert the description of the

equipment and its problems are matters in the public record (Doc. 224, Exh. C) and that

testimony relating to a subsequent report by a consultant is virtually the same as that contained in

Exhibit C.  The Court is without sufficient information from either party to make a determination

on whether this testimony is confidential or not.

(2)  **143:20-153:17** -- Defendants assert this testimony discusses research and

development projects, a report regarding possible operational changes, facility design, and

equipment capabilities.  Plaintiffs argue this testimony is not protected, in part, and is accessible

to the public in part.  However, it is not clear to the Court the specific portions of the deposition

transcript plaintiffs believe are not confidential.  Although plaintiffs also argue that design flaws

have no evident commercial value to defendants or their competitors, it would appear that if

defendants made the appropriate evidentiary showing, such design problems are the type of

information that may give a competitor a competitive advantage if disclosed.  Nevertheless, the

Court is without sufficient information from either party to make a determination on whether this

testimony is confidential or not.

(3)  **154:9-155:9** -- Defendants assert this testimony is confidential because it discusses

research and development projects and capital improvement plans. However, it is not apparent to the Court how the replacement of parts of a piece of equipment and the identity of employees who recommended such replacement constitute confidential research, development, or commercial information not accessible to the public. In the absence of such information, this testimony would not qualify for confidential treatment.

(4) **157:10-20** -- Defendants assert this testimony is confidential because it discusses the design capabilities of equipment. It is not clear to the Court how testimony relating to the purpose of a particular piece of equipment and a history of failures of that equipment constitute confidential research, development, or commercial information not accessible to the public. In the absence of such information, this testimony would not qualify for confidential treatment.

(5) **162:16-165:13** -- Defendants argue that this testimony is entitled to confidential treatment because it discusses the design capabilities of a particular piece of equipment and raw materials used in the facility's production process. Plaintiffs argue that the discussion of the particular piece of equipment and how it was designed to handle coal with a particular chemical content is "not protectible, in part, and is accessible to the public, in part" and therefore not entitled to confidential treatment. Plaintiffs argue that the fact that a coke making plant uses coal is publicly known and the sulfur content of the coal used in defendants' production processes is published in each quarterly deviation report sent the Ohio EPA. The Court agrees that the information identified by plaintiffs would not be entitled to confidential treatment. However, to the extent the testimony discusses the *percentage* of a chemical that the particular equipment was designed to treat, the Court envisions that this may be the type of information that would be entitled to confidential treatment upon a proper demonstration by defendants.

12

**(6) 165:16-166:22** -- This testimony discusses a component of a particular piece of equipment, its purpose, and the problems with the component. Defendants assert confidential protection based on the discussion of the operational capabilities of the facility, the purpose of the equipment, and how such equipment is operated. Defendants also dispute plaintiffs' claim that such information is public record. Plaintiffs argue the only purpose of the component is common knowledge and the problems with the component are well documented in the publicly-available quarterly deviation reports. The Court is without sufficient information to determine if the testimony discussing the component, its purpose, and the problems associated with it constitute confidential research, development, or commercial information not accessible to the public. In the absence of any additional information disputing plaintiffs' assertion that this information is readily available in the quarterly deviation reports and that the purpose of the component is common knowledge, the testimony would not be entitled to confidential protection.

**(7) 175:12-182:2** -- This testimony concerns a number of problems with a piece of equipment and the installation of a device to address these problems. Defendants assert the discussions of a confidential report regarding the design and capabilities of the equipment and research and development activities are entitled to protection. While the Court agrees with plaintiffs that defendants have not met their burden of demonstrating how this testimony constitutes confidential research, development, or commercial information not accessible to the public, this may be the type of information that would be protected as confidential upon a proper demonstration by defendants.

**(8) 182:10-23** – This testimony discusses problems with leaks from equipment that resulted in bypass venting. Defendants assert this information is protected because it discusses

13

facility design and equipment capabilities. Plaintiffs argue the testimony discusses well-documented and public information as reported in the quarterly deviation reports. The Court is without sufficient information to determine if the testimony discussing this particular problem with the equipment constitutes confidential research, development, or commercial information not accessible to the public. In the absence of any additional information disputing plaintiffs' assertion that this information is readily available in the quarterly deviation reports and that the problem is public knowledge, this testimony would not be entitled to confidential protection.

(9) **191:8-193:22** –This testimony discusses oven charge weights and reductions thereof during a HRSG leak. Despite defendants' assertion of confidentiality based on the discussion of the equipment and technology the facility employs, operational decision-making processes, and production capabilities, plaintiffs have shown this is publicly available information. (Doc. 224, Exh. H). This testimony would not be entitled to protection as confidential.

(10) **210:19-211:19** – This testimony concerns venting via vent stack lids on a piece of equipment. Defendants assert this discussion of the design and capabilities of facility equipment is entitled to protection. While the Court agrees with plaintiffs that defendants have not met their burden of demonstrating how this testimony qualifies as confidential research, development, or commercial information not accessible to the public, this may be the type of information entitled to confidential protection if demonstrated by an appropriate evidentiary showing.

(11) **214:8-216:8** –The Court is without sufficient information from either party to determine whether this information would be protected or not.

(12) **218:16-228:12** –The Court is without sufficient information from either party to determine whether this information would be protected or not.

**(13) 239:15-243:17, 247:25-254:2** – This testimony concerns land acquisition, soil testing on certain property, and the results thereof. Defendants assert the discussions of research and development information, including a confidential research report, and facility expansion and related land acquisitions are confidential as disclosure would provide competitors with confidential details of development plans and business strategies. Without additional information, the Court agrees with plaintiffs that the exhibit discussed is not a "confidential research report" and that the vague testimony regarding the land acquisition does not evince "details" of development plans and business strategies. In the absence of any additional information from defendants, this testimony would not be entitled to confidential protection.

**(14) 256:4-258:8** -- This testimony discusses the training the deponent received. The Court cannot fathom how this testimony "discusses internal management decision making processes and operational details of how the facility is run" as defendants assert. This type of testimony would not be entitled to protection as confidential.

**(15) 262:7-269:14** -- This testimony discusses the terms "deviation" and "malfunction," the deponent's understanding of those terms, and his understanding of the Ohio guidelines on each. In the absence of any additional information explaining defendants' confidentiality designation, this testimony cannot fairly be characterized as "internal management decision making processes and operational details of how the facility is run" as defendants argue. This type of testimony would not be entitled to protection as confidential.

**(16) 269:18-281:11** – This testimony discusses the proposed consent decree and the deponent's understanding of what is or is not included. This is not confidential as it does not qualify as a "communication" exchanged between the parties during settlement negotiations.

15

The Court is unable to discern that the testimony discusses any particular negotiations with the

EPA to resolve the notices of violation. To the extent defendants assert the testimony discusses

confidential research and development plans, the equipment and technology the facility employs,

and the design and operation of such equipment, the Court agrees with plaintiffs that defendants

have not met their burden of demonstrating how this testimony qualifies as confidential research,

development, or commercial information not accessible to the public. Nevertheless, if

demonstrated by an appropriate evidentiary showing, this may be the type of confidential

information entitled to protection.

## II. EXHIBITS TO ESSMAN DEPOSITION

### A. Undisputed Exhibits

Of the 33 exhibits reviewed in the Essman deposition, 24 were initially designated as

confidential. Defendants subsequently withdrew their confidentiality designations for Exhibits 3,

4, 22, and 25. Exhibits 3 and 4 are Haverhill organizational charts dated April 2009 and

November 2011. Exhibit 22 is a January 2012 email with a graph attached showing the duration

of emissions from Haverhill sources from January 2009 to December 2011, data which plaintiffs

claim are publicly available information. Exhibit 25 is an October 2010 email from Suncoke to a

vendor explaining how the US EPA is using infrared cameras on stacks to show venting when

lids are closed. These exhibits reflect publicly available information and are not entitled to

protection under the Protective Order.

### B. Exhibits Discussing Publicly Known Information and Emissions Data

Defendants have not met their burden of showing the following exhibits are entitled to

protection as confidential, with limited exceptions:

16

(1) **Exhibit 11: email chain of February 11-12, 2009.**  This document discusses the publicly known fact of a stack collapse at Haverhill.  The only confidential information contained therein is under the heading "Commercial."  This should be redacted and the confidentiality challenge to the remainder of the document is SUSTAINED.

(2) **Exhibit 12: October 2009 "Environmental Metrics-Scorecard."**  This document contains 2008 and year-to-date 2009 data on the number of complaints, malfunctions, deviations, and NOVs received by SunCoke's plants, including Haverhill.  The Court disagrees with defendants' assertion that the exhibit contains any "analysis" of the publicly available data.  The document contains publicly available information and is not protected as confidential.  Plaintiffs' challenge thereto is SUSTAINED.

(3) **Exhibits 26 and 27: emails dated June 2011.**  It is undisputed that the cost information in these documents is confidential.  The Court agrees with plaintiffs that the information that identifies the constituents of the hazardous material constitutes "emissions data," which includes information necessary to determine a source or characteristics of emissions.  This information is not confidential and the challenge thereto is SUSTAINED.

(4) **Exhibits 30 and 30A: email dated 2/2/2011 and aerial photograph.**  These exhibits concern preliminary lab analyses of soil borings taken in January 2011 from nearby property.  The Court agrees with plaintiffs that the information that identifies the constituents of the hazardous material constitutes "emissions data," which includes information necessary to determine a source or characteristics of emissions.  This information is not confidential and the challenge thereto is SUSTAINED.

17

**C.  EXHIBITS PURPORTING TO CONTAIN RESEARCH, DEVELOPMENT, OR COMMERCIAL INFORMATION**

With respect to the remaining exhibits in dispute, the Court is able to discern from the content of the documents that they contain research, development, or commercial information. However, defendants have not met their burden of showing that such information has been maintained as confidential and will be reasonably protected as confidential in the future.  For this reason, plaintiffs' challenges to Exhibits 6, 7, 8, 9, 10, 13, 14, 17, 18, 19, 20, 21, 28, and 29 are SUSTAINED.

Nevertheless, as above, the Court provides the following analysis to guide the parties in the future on the confidentiality designations of similar exhibits:

**(1)  Exhibit 6:  email chain dated 2/13/2010.**  The Court disagrees with plaintiffs that the email chain contains only information on the revision of the format of documents to track safety, environmental, and production data.  This exhibit constitutes research, development, or commercial information as it discusses the indicators used to assess plant performance and drive research and development activities, as well as data collection techniques related to research and development.

**(2)  Exhibit 7: email dated 12/17/2009.**  The Court agrees with defendants that this document discloses business plan objectives and discusses profitability measures, the disclosure of which may give competitors confidential details of the facility's operations and development plans.

**(3)  Exhibit 8: email chain dated 10/12/2011.**  The Court agrees with defendants that this document discusses research and development plans and key capital projects and

18

expenditures.

(4) **Exhibits 9 and 10: email chains dated 3/27/2012.** These documents discuss performance problems with certain equipment, design specifications, and the use of such equipment at Haverhill, as well as research and development investigations undertaken and potential changes as a result of the investigations. This information may qualify as confidential upon a proper showing.[2]

(5) **Exhibit 13: email dated 3/18/2009.** This exhibit relates to equipment problems and the opinions and recommendations of two outside vendors. This document reflects the technical capabilities and operational conditions of equipment, and discusses research and development studies and projects that may qualify as the type of business information that is protected as confidential upon the proper showing.

(6) **Exhibit 14: email dated 3/2/2012 transmitting a spreadsheet dated 3/2/2012 listing projects for 2012.** Plaintiffs do not dispute that the budget and financial information contained therein is confidential and can be redacted. However, plaintiffs argue defendants have failed to show the list of projects qualifies for confidential treatment. The list of capital projects and research and development plans is certainly the type of information that would qualify for confidential treatment upon a proper evidentiary showing by defendants.

(7) **Exhibit 17: email with power point attached dated 3/18/2010.** The discussion of research and development plans in this document would be the type of information that would qualify for confidential treatment upon a proper evidentiary showing by defendants.

---

[2]The question of whether these documents and others constitute "emissions data" that is not confidential under the Protective Order is discussed *infra*.

**(8) Exhibit 18: email dated 12/1/2011.** The email goes beyond simply categorizing malfunctions from 2009 to 2011, which is based on publicly available information. The exhibit contains an analysis of the events, including research and development plans that, if proven, would be protected as confidential.

**(9) Exhibit 19: letter dated March 2009.** The Court agrees with plaintiffs that Appendix A contains emissions data that is not protected under the Protective Order. However, the financial data contained in the letter and report,[3] as well as discussions of the design and capabilities of the specific equipment, may be the type of information protected as confidential had defendants made the appropriate evidentiary showing.

**(10) Exhibit 20: email dated 2/3/2012.** The document contains publicly available information and defendants' analysis and research and development plans based on such information. Upon a proper evidentiary showing, the analysis and action plan portions would be protected.

**(11) Exhibit 21: email dated 5/21/2010.** This document discusses problems with a particular piece of equipment, including the causes thereof and potential solutions. This is the type of research and development information that would be protected if established by evidence.

**(12) Exhibit 28: email chain dated June 2-10, 2010.** This exhibit discusses a trial of air pollution equipment, including design specifications and recommendations for the trial. This is the type of research and development information that would be protected if established by evidence.

---

[3] Defendants' characterization of the report as "confidential" is insufficient in itself to show it deserves protection under Rule 26.

**(13) Exhibit 29: notes from conference call dated 9/7/2010.** This exhibit discusses agenda items on pollution-related operational issues and related action items, as well as cost data. This is the type of research and development information that would be protected if established by evidence.

**D.  EXHIBITS 9, 10, 13 AND 17 WHICH ALLEGEDLY CONSTITUTE EMISSIONS DATA**

EPA regulations define "emissions data" as "information necessary to determine the identity, amount, frequency, concentration, or other characteristics (to the extent related to air quality) of any emission which had been emitted by the source" and "[a] general description of the location and/or nature of the source to the extent necessary to identify the source. . . ." 40 C.F.R. § 2.301(a)(2)(i)(A).  Whether  particular information qualifies as "emission data" is a context specific inquiry that depends on whether such information is "necessary to determine" the amount, frequency, concentration and other characteristics of a particular substance. *See, e.g., Natural Resources Defense Council v. Leavitt*, No. 04-01295, 2006 WL 667327, at *4 (D.D.C. March 14, 2006) (and cases cited therein). "'[E]missions data' is defined narrowly to focus on information obtained from a source of emissions" and "a strict interpretation of the 'necessary to determine' requirement is warranted in order to ensure that the exception does not swallow the rule." *Id.*

With respect to Exhibits 9, 10, 13, and 17, the Court is not persuaded that the documents constitute emissions data.  The information contained therein, which discusses specific equipment problems and repair plans and capital expenditures related thereto, does not appear to be necessary to determine the characteristics or sources of specific emissions even though it is

undoubtedly "related to" Haverhill's operations, coke production, and emissions.

## III. CONCLUSION

The Court has attempted to give the parties guidance as to the types of testimony and exhibits which may be designated as confidential under the Protective Order.  Using the guidance provided in this opinion, the parties shall confer with one another to resolve any future disputes over the confidentiality of testimony and documents in this case.

For the reasons stated above, plaintiffs' motion to vacate confidentiality designations (Doc. 214) is **GRANTED**.

**IT IS SO ORDERED**.

Date: 2/3/14

Karen Litkovitz
United States Magistrate Judge